**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

ROSEMARY MACDONALD HOUSTON,
          *Defendant-Appellant.*

No. 04-30216

D.C. No.
CR-03-00037-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
April 4, 2005—Seattle, Washington

Filed May 9, 2005

Before: Ronald M. Gould, Richard C. Tallman, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Tallman

## COUNSEL

David F. Ness, Assistant Federal Defender, Federal Defenders of Montana, Great Falls, Montana, for the defendant-appellant.

Joseph E. Thaggard, Assistant United States Attorney, United States Attorney's Office, Great Falls, Montana, for the plaintiff-appellee.

## OPINION

TALLMAN, Circuit Judge:

Rosemary MacDonald Houston was convicted of distributing methadone to Trina Bradford which resulted in Bradford's death. 21 U.S.C. § 841(a)(1), (b)(1)(C).[1] Houston challenges the sufficiency of the evidence supporting her conviction, and particularly protests being held responsible for a death that she claims was an unforeseeable suicide. We conclude that the plain language of the statute establishes that although cause-in-fact must be proven, foreseeability is not an element of the crime, and that sufficient evidence supports the jury's verdict as to the remaining elements. We have jurisdiction over this federal crime and affirm.

---

[1]In the remainder of this Opinion, "§ 841" refers to Title 21 of the United States Code, section 841.

## I

On October 15, 2001, Trina Bradford was found dead in her home on the Blackfeet Indian Reservation in Browning, Montana. Subsequent forensic investigation revealed that Bradford had numerous controlled substances in her blood and urine, including a lethal concentration of methadone. The methadone was determined to have come from a prescription bottle bearing the defendant's name that was found at the scene of Bradford's death.

Houston was indicted for distribution of a controlled substance resulting in death under § 841(a)(1) and (b)(1)(C). She was convicted after a jury trial and sentenced to 276 months imprisonment and five years of supervised release.

## II

The Government was not required to prove that Bradford's death was reasonably foreseeable by Houston in order to obtain the heightened minimum sentence authorized by § 841(b)(1)(C). The statute under which Houston was convicted makes it unlawful to "knowingly or intentionally . . . distribute . . . a controlled substance" and provides a heightened sentence "if death or serious bodily injury results from the use of such substance[.]" § 841(a)(1), (b)(1)(C). To obtain a conviction under § 841(a)(1), the Government was required to prove that 1) Houston knowingly delivered methadone to Trina Bradford and 2) Houston knew it was methadone or some other prohibited drug. To obtain the heightened minimum sentence described in § 841(b)(1)(C), the Government also had to prove that the methadone Houston delivered to Bradford actually caused Bradford's death. The Government was not required to prove foreseeability as an element of the drug distribution crime.

The district court correctly instructed the jury as to the

requirements for conviction under § 841(a)(1),[2] but its instruction regarding § 841(b)(1)(C) was in error.[3] The district court improperly instructed that the Government was required to prove beyond a reasonable doubt that "the defendant's act was a proximate cause of Trina Bradford's death." To the extent that this instruction suggested that Bradford's death had to have been a foreseeable result of Houston's act,[4] the

---

[2]The district court properly instructed that:

> In order for the defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt: First, the defendant knowingly delivered methadone to Trina Bradford. Second, the defendant knew it was methadone or some other prohibited drug.

[3]Although the Government did not object to the district court's jury instruction below, we exercise our discretion to consider whether the operation of § 841(b)(1)(C) depends upon proof that death was reasonably foreseeable because we believe that answering this purely legal question is necessary to fairly resolve this appeal. *See United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978) (noting that a court of appeals may exercise its discretion to consider an issue if it "is purely one of law" and "does not affect or rely upon the factual record developed by the parties"); *see also United States v. Soler*, 275 F.3d 146, 152 (1st Cir. 2002) (describing the "question of whether the operation of section 841(b)(1)(C) depends to any extent upon proof that death was reasonably foreseeable" as "a purely legal issue").

[4]It is not completely clear that in instructing the jury that proximate cause was a necessary element, the district court was requiring the jury to determine that Bradford's death have been foreseeable to Houston. This is largely because the term proximate cause is not well defined. *See Blue Shield of Va. v. McCready*, 457 U.S. 465, 478 n.13 (1982) ("[T]he principle of proximate cause is hardly a rigorous analytical tool."). The district court's further instruction about proximate cause, that it was a cause "which played a substantial part in bringing about Trina Bradford's death, so that the death was a direct result or a reasonably probable consequence of the defendant's act[,]" did not specifically mention foreseeability, except to the extent that a foreseeability requirement is inherent in the "reasonably probable consequence" language. However, proximate cause is often interpreted to include a requirement that the resulting harm was foreseeable to the wrongdoer. *See, e.g., Lawrence v. United States*, 340 F.3d 952, 957 (9th Cir. 2003); *United States v. Hanousek*, 176 F.3d 1116, 1123 (9th Cir. 1999) ("To prove proximate cause, the government must establish that the harm was a foreseeable result of the conduct.").

instruction required the Government to prove more than the statute requires, and was therefore in error. However, for reasons discussed further below, we find that the district court's error was harmless and did not affect Houston's substantial rights.

**A**

**[1]** Proximate cause is not a necessary element of every crime. Although we noted in *United States v. Main*, 113 F.3d 1046 (9th Cir. 1997), that "[a] basic tenet of criminal law is that the government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury[,]" *id.* at 1050 (quotation marks omitted), it was important in *Main* that proximate cause was "implicit in the common understanding of the crime" at issue (involuntary manslaughter). *Id.* (citing *United States v. Keith*, 605 F.2d 462, 463 (9th Cir. 1979)). *Main* and the cases upon which it relied involved crimes such as involuntary manslaughter and conspiracy that impose criminal culpability only when the consequences of the criminal act are reasonably foreseeable. *See id.*; *United States v. Spinney*, 795 F.2d 1410, 1415 (9th Cir. 1986) (conspiracy to assault); *United States v. Keith*, 605 F.2d 462, 463 (9th Cir. 1979) (involuntary manslaughter). *Main*'s holding does not extend to cases, such as this one, where foreseeability is not "implicit in the common understanding of the crime" being prosecuted. *See Main*, 113 F.3d at 1050.

**B**

The addition of proximate cause as an element necessary for invoking the twenty-year minimum sentence described in § 841(b)(1)(C) is inconsistent with the statutory language, our circuit's related precedent, and the conclusions of every other federal court of appeals to consider the issue.

**[2]** The plain language of § 841(b)(1)(C) demonstrates that proximate cause is not a required element. Congress specified

that the heightened sentence would apply "if death . . . results" from the distribution of a controlled substance. This passive language unambiguously eliminates any statutory requirement that the death have been foreseeable. According to its language, as long as death "results" from the use of a described controlled substance, the person convicted of distributing the substance "shall be sentenced to a term of imprisonment of not less than twenty years or more than life." *Id.*

We have previously considered whether foreseeability is required under another subsection, § 841(b)(1)(A)(ii), which imposes a twenty-year statutory minimum for possession of five kilograms or more of certain controlled substances. *United States v. Mesa-Farias*, 53 F.3d 258 (9th Cir. 1995). In *Mesa-Farias*, we held that § 841(b)(1)(A)(ii) was applicable "regardless of whether the total amount was foreseeable." *Id.* at 260. In so doing, we limited to conspiracy cases our previous holding in *United States v. Becerra*, 992 F.2d 960 (9th Cir. 1993), which required that the quantity of drugs be foreseeable for § 841(b) to apply. *Id.* We held that a defendant was liable for the sentencing enhancement described in § 841(b)(1)(A)(ii) whether or not he could have reasonably foreseen the amount of drugs in his possession. *Id.* We see no reason to treat differently § 841(b)(1)(C), the sentencing enhancement at issue in this case, from the *Mesa-Farias* panel's treatment of a related subsection, § 841(b)(1)(A)(ii).

**[3]** Other circuits that have considered the question have reached the same conclusion. *See Soler*, 275 F.3d at 152-53; *United States v. McIntosh*, 236 F.3d 968, 972-73 (8th Cir. 2001); *United States v. Robinson*, 167 F.3d 824, 830-32 (3d Cir. 1999); *United States v. Patterson*, 38 F.3d 139, 145-46 (4th Cir. 1994). In *Patterson*, the Fourth Circuit observed that:

> The statute puts drug dealers and users on clear notice that their sentences will be enhanced if people die from using the drugs they distribute . . . . Where

serious bodily injury or death results from the distri-
bution of certain drugs, Congress has elected to
enhance a defendant's sentence regardless of
whether the defendant knew or should have known
that death would result.

38 F.3d at 145 (internal citation omitted). The Third Circuit
agreed with *Patterson* in its *Robinson* decision, noting that
Congress's language is "plain and unambiguous[.]" 167 F.3d
at 830. The Eighth Circuit found that "giving effect to [the
statute's] plain meaning prohibits us from superimposing
upon the statute a foreseeability or proximate cause require-
ment." *McIntosh*, 236 F.3d at 972. Finally, in *Soler*, the First
Circuit described the statute as "a rule of strict liability[.]"
275 F.3d at 152.[5]

## C

[4] Requiring that the death have been foreseeable before
imposing the enhancement described in § 841(b)(1)(C) is
inconsistent with the plain language of the statute and with
our circuit's prior treatment of § 841(b)(1). We therefore join
our sister circuits in holding that proximate cause is not a
required element for conviction and sentencing under
§ 841(b)(1)(C). All that is necessary under the statutory lan-
guage is that "death . . . results" from the offense described
in § 841(a)(1). § 841(b)(1)(C). Cause-in-fact is required by
the "results" language, but proximate cause, at least insofar as
it requires that the death have been foreseeable, is not a
required element.

---

[5]Because we recognize there may be some fact scenarios in which the
distribution of a controlled substance is so removed and attenuated from
the resulting death that criminal liability could not be imposed within the
bounds of due process, we stop short of ascribing to the First Circuit's
"strict liability" language. Proof that the resulting death was actually
caused by ingestion of the controlled substance knowingly distributed by
the defendant is sufficient to increase the punishment for the unlawful dis-
tribution.

**[5]** We find that the district court erred in instructing the jury otherwise. We nevertheless affirm Houston's conviction because the district court's error was harmless. It inured to the benefit of the defendant because it placed a higher burden of proof on the Government than is required by law. The error was without question harmless beyond a reasonable doubt on these facts; it did not affect Houston's substantial rights. 28 U.S.C. § 2111; Fed. R. Crim. P. 52(a); *see Killian v. United States*, 368 U.S. 231, 257-58 (1961) (concluding that an instruction that "exacted a higher standard of proof" than the law required could not have prejudiced the defendant); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 219 (1940) (noting that an erroneous jury instruction was more favorable to the defendants than they could have required).

## III

Houston challenges the sufficiency of the evidence supporting her conviction. We evaluate the sufficiency of the evidence supporting this conviction *de novo*. *United States v. Bucher*, 375 F.3d 929, 934 (9th Cir. 2004). We must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In this case, the jury — through its guilty verdict — found that the Government proved all of the essential elements of the crime, and more, beyond a reasonable doubt. Although the district court incorrectly instructed the jury that it needed to find proximate cause, and not simply cause-in-fact, the jury necessarily reached the cause-in-fact inquiry in the course of concluding beyond a reasonable doubt that Houston's actions were the proximate cause of Bradford's death. Consequently, because the jury found all of the essential elements of the crime — 1) that Houston sold methadone to Bradford, 2) that Houston knew that the substance she was selling was methadone (or some other controlled substance), and 3) that the

methadone was the cause-in-fact of Bradford's death — we can evaluate the sufficiency of the evidence without remanding to require that this case be retried with the correct instructions.

[6] We find ample evidence to support the jury's verdict. Several witnesses provided evidence in support of the first two elements. Bradford's mother testified that Houston admitted to her that Houston sold methadone to Bradford for $2 per pill. Bradford's sister testified that Houston confessed to selling forty methadone pills to Bradford shortly before Bradford's death. Another witness testified that she saw Bradford and Houston together in the bathroom of Houston's sister's house; Houston had a bottle of prescription medication and Bradford had "a bunch of money[.]" An emergency medical technician dispatched to Bradford's home after Bradford's body was discovered testified that she observed a bottle of prescription methadone bearing Houston's name next to Bradford's bed. From this evidence, a reasonable trier of fact could conclude that Houston knowingly delivered what she knew to be methadone to Bradford.

[7] There was also sufficient medical evidence to support the jury's conclusion that Bradford died from using the methadone that Houston sold to her. Montana State Medical Examiner Dr. Gary Dale testified that methadone toxicity caused Bradford's death. This evidence was sufficient to permit the jury to reasonably conclude that the methadone was the cause of Bradford's death.

## IV

Although the district court erred in requiring the jury to find proximate cause, the error favored the defendant by imposing additional burdens on the Government beyond what the statute requires. We find that sufficient evidence supported Houston's conviction. The district court's judgment is **AFFIRMED**.